Sherri **BOGORAD**, Plaintiff-Appellant,

v.

**ELI LILLY & COMPANY,**
Defendant-Appellee.

No. 82–1790.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 24, 1984.

Decided July 17, 1985.

---

John A. Obee, Charfoos, Christensen, Gilbert & Archer, P.C., Adrienne G. Southgate, argued, Detroit, Mich., for plaintiff-appellant.

John E.S. Scott, Dickinson, Wright, McKean, Cudlip & Moon, Detroit, Mich., Larry R. O'Neal, argued, Shook, Hardy & Bacon, Kansas City, Mo., for defendant-appellee.

Before EDWARDS* and CONTIE, Circuit Judges, and SPIEGEL,** District Judge.

* Honorable George Edwards took senior status January 15, 1985.

GEORGE CLIFTON EDWARDS, Jr., Circuit Judge.

Plaintiff Sherri Bogorad filed a complaint in the U.S. District Court for the Eastern District of Michigan which was dismissed on defendant Lilly's motion. Bogorad appeals. The appeal presents two important issues—one procedural and the other substantive.

### The Procedural Issue

■ The District Court dismissed this case before trial. Lilly claims that Bogorad's counsel "voluntarily" sought the dismissal and that the dismissal is therefore final and unappealable under Rule 41(a), Federal Rules of Civil Procedure. Bogorad's counsel claims that the District Court had dismissed finally the only viable claim which she had advanced and that such a dismissal was "final" even though the District Judge offered to hear her suit to the degree that it sounded in negligence.

This court, in its latest treatment of this issue, has held that a similar judgment was appealable when the "solicitation of the formal dismissal was designed only to expedite review of an order which had in effect dismissed appellant's complaint." *Raceway Properties, Inc. v. Emprise Corp.*, 613 F.2d 656, 657 (6th Cir.1980); *see also United States v. Procter & Gamble Co.*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958).

We decline to dismiss appellant's appeal upon the procedural ground argued by appellee. Appellant's motion to dismiss must be read in the light of the District Judge's rulings which ruled out the cause of action she was seeking to present. As will be shown below, we believe she had stated a case for jury trial under Michigan law.

### The Substantive Issue

■ Plaintiff Sherri Bogorad's claim in outline form is as follows: 1) Her mother, Diane Bogorad, took massive doses of diethylstilbestrol (DES) in 1951 when she was pregnant with Sherri; 2) Lilly manufac-

** Honorable S. Arthur Spiegel, United States District Court for the Southern District of Ohio, sitting by designation.

tured and recommended to doctors including Mrs. Bogorad's doctor the drug Diane Bogorad took; 3) By 1951 it was known in the scientific community that DES taken by a pregnant woman could adversely affect her fetus; 4) Before 1951, cancer researchers were giving DES to animals as a carcinogen in order to study resulting cancers; 5) By 1975 Sherri Bogorad had developed vaginal adenosis—a condition defined as "the presence in the vagina of multiple ectopic areas of folded endocervical mucosa;" 6) This last stated condition occasioned portions of Sherri Bogorad's vagina to be removed surgically; 7) As a result of Sherri Bogorad's exposure and the operation just referred to, she is subject to the possibility of inflammatory disease in the pelvis, irregular menstrual periods and a greater possibility of infertility than a normal female who had not been exposed to DES; 8) She has experienced psychological trauma as a result of the circumstances related above and will need to be monitored for the rest of her life due to the possibility of vaginal cancer and faces an increased risk of an unfavorable outcome of any pregnancy she may have.

Plaintiff's claims as just outlined are, of course, completely untested due to the dismissal entered by the District Judge, but our review of this case convinces us that they should be tried.

We are aided in this decision by two recent decisions of the Michigan Supreme Court which the District Judge did not have available to him at the time of his ruling. Subsequent to the trial court's decision and to the briefing and argument of this case in this court, the Michigan Supreme Court handed down a lengthy and carefully phrased unanimous decision. We read it as reiterating the strong inclination in Michigan law toward favoring trial of any properly pled claims unless those claims are "clearly unenforceable as a matter of law." *Abel v. Eli Lilly & Co.*, 418 Mich. 311, 343 N.W.2d 164 (1984). Chief Justice Williams' opinion bears quotation in this respect:

"The test which the court should apply in considering motions under GCR 1963, 117.2(1) is whether plaintiff's claim, on the pleadings, is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery." *Crowther v. Ross Chemical & Mfg. Co.*, 42 Mich.App. 426, 431, 202 N.W.2d 577 (1972).

418 Mich. at 323, 343 N.W.2d at 169.[1]

The District Judge could not have reviewed plaintiff-appellant's complaint with this exact standard in mind since the *Abel* opinion was not available to him at that time.

Even more importantly, we believe he should have available a still later opinion of the Michigan Supreme Court which appears to us to mandate trial of the issues in this case. In *Prentis v. Yale Manufacturing Co.*, 421 Mich. 670, 365 N.W.2d 176 (1984) (released Feb. 11, 1985), the Michigan Supreme Court said as follows:

"We hold that in this products liability action against a manufacturer for an alleged defect in the design of its product, where the jury was properly instructed on the theory of negligent design, the trial judge's refusal to instruct on breach of warranty was not reversible error. Such instructions could have created juror confusion and prejudicial error. Indeed, such an instruction would have been repetitive and unnecessary and could have misled the jury into believing that plaintiff could recover on the warranty count even if it found there was no "defect" in the design of the product. See *Smith v. E.R. Squibb & Sons*, 405 Mich. 79, 91, 273 N.W.2d 476 (1979).

---

1. This test is equivalent to the rule applied by federal courts:

In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (footnote omitted); *accord, Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–596, 30 L.Ed.2d 652 (1972).

"This opinion is limited solely to its facts. We do not suggest that implied warranty and negligence are not separate and distinct theories of recovery; see *Squibb, supra,* p. 98, 273 N.W.2d 476 (Levin, J., *dissenting*), or that the Michigan products liability statute, M.C.L. § 600.2945; M.S.A. § 27A.2945, has merged all former products liability theories or causes of action into a single unified 'products liability theory.'[30] We do not dispute the generally recognized distinction between the elements of negligence and breach of warranty. We recognize that the negligence theory generally focuses on the defendant's conduct, requiring a showing that it was unreasonable, while warranty generally focuses upon the fitness of the product, irrespective of the defendant's conduct. See *Squibb, supra,* pp. 98–99, 273 N.W.2d 476 (Levin, J., *dissenting*).

"This holding is based upon the recognition that under the common law of products liability, in an action against the manufacturer of a product based upon an alleged defect, in its design, 'breach of implied warranty and negligence involve identical evidence and require proof of exactly the same elements.' See *Squibb, supra,* p. 88, 273 N.W.2d 476. A manufacturer has a duty to design its product so as to eliminate any unreasonable risk of foreseeable injury. *Owens v. Allis-Chalmers Corp.,* 414 Mich. 413, 425, 326 N.W.2d 372 (1982). For the lack of reasonable care in the face of such duty, the manufacturer may be answerable in a negligence action. *Elsasser v. American Motors Corp.,* 81 Mich. App. 379, 384, 265 N.W.2d 339 (1978). When proceeding under a theory of implied warranty, a design defect is established by proof that the product is not reasonably safe for the uses intended, anticipated, or reasonably foreseeable. *Dooms v. Stewart Bolling & Co.,* 68 Mich.App. 5, 14, 241 N.W.2d 738 (1976), *lv. den.* 397 Mich. 862 (1976). For the sale of a product defective in such respect, the seller may be answerable for breach of an implied warranty. *Elsasser, supra.* Thus, when the issue is liability of a manufacturer who was also the seller, it is inconceivable that a jury could determine that the manufacturer had not breached its duty of reasonable care and at the same time find that the product was not reasonably safe for its reasonably foreseeable uses. The question in either case turns on reasonable care and reasonable safety, and as pointed out by Dean Prosser, the liability of the manufacturer rests 'upon a departure from proper standards of care so that the tort is essentially a matter of negligence.'[31]

"Applying these principles to the facts of this case, although plaintiffs alleged that their injuries were proximately caused by defendant's negligence and breach of an implied warranty, their evidence and proofs at trial focused on the single claim that the defendant *defectively designed* the 'walkie hi-lo' forklift, because it failed to provide a seat or platform for the operator. Thus, recovery under either theory required the jury to determine that the forklift was defectively designed by defendant. *Caldwell v. Fox,* 394 Mich. 401, 231 N.W.2d 46 (1975). The factual inquiry was: whether the design of defendant's forklift was 'unreasonably dangerous' because it did not contain a seat or platform for the operator. See *Owens, supra,* 414 Mich. at p. 427, 326 N.W.2d 372.

"The test for determining whether the design was "unreasonably dangerous" was: whether the alleged defect in the design of the product created an unreasonable risk of foreseeable injury. *Elsasser, supra.* Stated another way, whether the manufacturer was under a duty to use reasonable care to design a product that was reasonably safe for its intended, anticipated, or reasonably foreseeable uses. *Dooms v. Stewart Bolling, supra,* 68 Mich. App. p. 14, 241 N.W.2d 738.

"The trial court properly recognized that the standards of liability under the theories of implied warranty and negligence were indistinguishable and that instructions on both would only confuse the jury. Accordingly, the trial judge's instructions regarding the standard of care and theories of liability properly informed the jury of defendant's legal duties as the manufacturer

of the forklift. The court set forth the necessary elements for determining whether defendant defectively designed the forklift when it stated:

'A manufacturer of a product made under a plan or design which makes it dangerous for uses for which it is manufactured is[, however,] subject to liability to others whom he should expect to use the product or to be endangered by its probable use from physical harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design.

'A manufacturer has a duty to use reasonable care in designing his product and guard it against a foreseeable and unreasonable risk of injury and this may even include misuse which might reasonably be anticipated.'

"In essence, the jury was instructed to consider whether the manufacturer took reasonable care in light of any reasonably foreseeable use of the product which might cause harm or injury. *Caldwell v. Fox, supra.*

"Therefore we hold that in a products liability action against a manufacturer, based upon defective design, the jury need only be instructed on a single unified theory of negligent design.[32]

---

"[30] Cf. *Jorae* v. *Clinton Crop Service,* 465 F.Supp. 952 (E.D.Mich., 1979). As we noted in *In re Certified Questions, Karl* v. *Bryant Air Conditioning Co.,* fn. 5 *supra,* 416 Mich., at p. 567, 331 N.W.2d 456, 'Our reading of the statute does not require us to determine whether the Legislature completed the possible confluence of products liability negligence and implied warranty into one cause of action or whether two separate actions still remain extant.'

"Thus, as defense counsel has conceded, see fn. 6, the only time the distinction between implied warranty and negligence may have any significance in design defect cases, is in determining the liability of a seller who is not also the manufacturer of a product. See, *e.g., Bronson* v. *J. L. Hudson Co.,* 376 Mich. 98, 135 N.W.2d 388 (1965). We also are not required to determine whether the two theories are separate in cases alleging defects in manufacturing.

"[31] Prosser, Torts (4th ed.), § 96, p. 644. See also text accompanying fns. 24–26.

"[32] We thus approve the use of the recently adopted version of SJI2d 25.32, but disapprove

of the use of SJI2d 25.22 in the case of products liability actions against the manufacturer of a product where the action is based upon an alleged design defect. Directed verdict forms should also be corrected to reflect these changes."

421 Mich. at 691–95, 365 N.W.2d at 186–87.

The judgment of the District Court is vacated and the case is remanded for further proceedings consistent with the above.

CONTIE, Circuit Judge, concurring.

Although I join the majority opinion, I write separately in order to articulate my understanding of what the majority holds and to distinguish certain cases relied upon by the defendant.

This appeal involves Counts IV and V of the plaintiff's amended complaint. Count IV alleged that since adequate testing prior to distributing DES would have revealed that DES was both highly carcinogenic and ineffective in preventing miscarriages, the defendant was negligent in marketing DES at all. Count V alleged that the defendant breached implied warranties because the DES ingested by the plaintiff's mother was unfit for its intended use (*i.e.,* was defective) and caused the plaintiff to develop vaginal adenosis. The district court ruled that the plaintiff could not present either of these theories. According to the district court, Michigan law does not recognize implied warranty theories in products liability cases involving drugs. Moreover, the court held that although the plaintiff could proceed under a negligence theory, the only such theory cognizable under Michigan law in this drug case was that the defendant had provided inadequate warnings to physicians about the potential risks associated with use of DES. The district court refused to permit the plaintiff to proceed on the broader theory that the defendant was negligent in marketing DES at all.[1]

I agree with the majority that under *Prentis v. Yale Manufacturing Co.,* 421 Mich. 670, 365 N.W.2d 176 (1984), this case must be returned to the district court. In

---

**1.** Implicit in the plaintiff's position is that the defendant was negligent in ever marketing DES

regardless of the nature or extent of any warnings provided.

this case, as in *Prentis,* it is alleged not that one unit of a product line was defective but that the entire product line was defectively designed. *Prentis* teaches that in such cases the plaintiff must prove negligence even if it proceeds under an implied warranty theory. Accordingly, on remand Bogorad will be limited to the negligence theory articulated in Count IV.[2]

Turning to the specifics of Bogorad's negligence theory, the defendant contends that under *Smith v. E.R. Squibb & Sons, Inc.,* 405 Mich. 79, 273 N.W.2d 476 (1979), the only theory under which the plaintiff may proceed is that the defendant inadequately warned physicians of the dangers associated with DES. The defendant misreads *Smith.* Although *Smith* does hold that a drug manufacturer must warn the medical profession of "any risks inherent in the use of [a] drug which the manufacturer knows or should know to exist," 405 Mich. at 88, 273 N.W.2d 476, *Smith* does not hold that the inadequate warning theory is the only theory available to prospective plaintiffs. Indeed, the *Smith* court had no occasion to discuss other negligence theories because the plaintiff in that case pleaded only that warnings had been inadequate.

The general rule in Michigan is that a manufacturer must perform such tests as are reasonably necessary in order to insure that a product is safe. *See Ebers v. General Chemical Co.,* 310 Mich. 261, 274–75, 17 N.W.2d 176 (1945); *Selmo v. Baratono,* 28 Mich.App. 217, 226, 184 N.W.2d 367 (1970). The plaintiff in this case has alleged that had the defendant tested DES adequately, it would have discovered that the drug was highly carcinogenic and was ineffective in preventing miscarriages. If a jury were to accept these allegations, then the jury reasonably could conclude that the defendant was negligent in ever marketing DES because the marginal utility of the drug did not outweigh the serious health risks involved. *See Moning v. Alfono,* 400 Mich. 425, 254 N.W.2d 759 (1977).

The defendant also relies upon *Hasler v. United States,* 517 F.Supp. 1262 (E.D.Mich. 1981), *rev'd on other grounds,* 718 F.2d 202 (6th Cir.1983), *cert. denied,* — U.S. ——, 105 S.Ct. 84, 83 L.Ed.2d 31 (1984) and *Keil v. Eli Lilly & Company,* 88 F.R.D. 296 (E.D.Mich.1980) (unpublished). *Hasler* is distinguishable. The plaintiff is that case alleged that the defendant had been negligent in testing swine flu vaccine and in warning about the potential health risks. The district court found the defendant liable on the inadequate warning theory without discussing the inadequate testing claim. The court did not hold that only the inadequtae warning theory was cognizable under Michigan law.

It must be acknowledged that the district court did so hold in *Keil.* Since the district court's opinion in *Keil* is devoid of analysis on this point, however, the decision has little persuasive value. Plaintiff Bogorad has stated a claim upon which relief can be granted in Count IV of her complaint. The district court should have permitted her to proceed under that theory.

With these comments, I join the opinion of the majority.

---

**2.** Although *Prentis* does "not suggest that implied warranty and negligence are not separate and distinct theories of recovery," *see* 421 Mich. at 692, 365 N.W.2d 176, it does hold that in cases alleging a defective design the jury is to be instructed only on negligent design. Separate instructions on implied warranty—which would be identical to the negligence instructions—would be "repetitive and unnecessary." *Id.* at 691, 365 N.W.2d 176.