52 F.3d 326
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 John SANDUL, Robert Sandul, and Devona Sandul, Plaintiffs-Appellants,
v.
Timothy LARION, Sgt. Robert Stevenson, and Sgt. Lawrence
Little, Defendants-Appellees.
 No. 94-1233.
 United States Court of Appeals, Sixth Circuit.
 April 11, 1995.
 
 Before: KENNEDY and MILBURN, Circuit Judges; and WISEMAN,* District Judge.
 MILBURN, Circuit Judge.
 
 
 1
 Plaintiffs John, Robert, and Devona Sandul appeal the district court's order granting partial summary judgment to defendant City of Livonia, Michigan, police officers Timothy Larion, Sergeant Robert Stevenson, and Sergeant Lawrence Little on plaintiffs' claim of false arrest, and dismissing all remaining claims with prejudice in this civil rights action brought under 42 U.S.C. Sec. 1983 in which plaintiffs claim that defendants falsely arrested plaintiff John Sandul, that defendants unlawfully entered their house, and that defendants used excessive force against all plaintiffs in effectuating plaintiff John Sandul's arrest. On appeal, the issues are (1) whether the district court erred in granting summary judgment in favor of defendants as to plaintiffs' First Amendment false arrest claim, and (2) whether plaintiffs may appeal the district court's order dismissing with prejudice, at plaintiffs' request, plaintiffs' remaining claims of unlawful entry and excessive force. For the reasons that follow, we affirm in part, reverse in part, and remand the case to the district court.
 
 I.
 A.
 
 2
 On August 3, 1990, defendant Officer Timothy Larion was talking to a group of abortion protesters, which included women and children, picketing outside a restaurant in Livonia, Michigan, when a truck, in which plaintiff John Sandul was a passenger, passed by travelling at a high rate of speed. As the truck passed the group, defendant Larion observed plaintiff John Sandul lean out of the truck, make an obscene gesture at the protesters, and shout obscenities at them. Believing that this conduct violated the City of Livonia's disorderly conduct ordinance, Officer Larion began to pursue the truck. The truck, driven by Phillip Krikorian, stopped in front of Sandul's house.[1] John Sandul got out of the truck, and Officer Larion asked him for identification so that Officer Larion could issue him a citation for violating the city's disorderly conduct ordinance. John claims that after being searched by Officer Larion, he informed Officer Larion that his identification was in his house. At that point, John asserts that Officer Larion told him that he was under arrest for trying to start a riot. John claims that he did not believe that Officer Larion was serious and thus started walking toward his house. Officer Larion followed John to the porch of the house and grabbed John's arm in an attempt to prevent John from entering his house, but John pulled away from Officer Larion and went into his house. John claims he went into the kitchen of his house to make a sandwich. Officer Larion claims that John swung at him before entering the house, that John continued to yell obscenities and threats at him from inside the house, and that John punched the screen out of the front door.
 
 
 3
 At that point, Mrs. Devona Sandul, John's mother, spoke with Officer Larion, who was standing on the front porch. Officer Larion told Mrs. Sandul that John must come out of the house because he was under arrest. John claims that he saw Officer Larion point his gun at the door of the house. During this conversation, Officer Larion could hear John screaming that he was going to kill Officer Larion from the back of the house. Officer Larion then saw John come out of the garage attached to the house carrying a knife. The parties dispute the size of this knife. Officer Larion claims that the knife had a seven inch blade while John claims that the knife, which he allegedly was using to make a sandwich, was only a small paring knife. Officer Larion asserts that John, while about 20 feet away from Officer Larion, again threatened to kill him while John was holding the knife. At that point, Officer Larion radioed for back up. John later signed a handwritten confession admitting that he threatened the police officers with a knife although he now disputes the validity of the signature on this confession.
 
 
 4
 A large number of police officers responded to Officer Larion's request for back up. The Sanduls claim that at least 14 City of Livonia scout cars came to their house. Mr. Robert Sandul, John's father, and Mrs. Sandul continued to talk to the police officers from the doorway of their house. Defendant Sergeant Robert Stevenson attempted to arrest John for felonious assault while he was standing at the door and tried to grab John's arm. In response, John pulled his arm away, at which point either Sgt. Stevenson was pulled inside the door, as Sgt. Stevenson claims, or Sgt. Stevenson yelled "get him" and the police stampeded the doorway, as John claims. In either case, all of the Sanduls were knocked to the ground by the rushing police officers. John also claims that their house was then ransacked. The police contend that several officers entered the house to effectuate John's arrest, and John struggled violently. While John struggled, Mrs. Sandul attempted to pull the police officers off of John. John claims that at the police station, he was dragged across a cement parking lot and struck in the head, face, shoulder, chest, and stomach with a night stick.
 
 
 5
 John was arrested for felonious assault and for violating the City's disorderly conduct ordinance.[2] John was acquitted of the disorderly conduct charge by a jury, and a mistrial was declared with regard to the felonious assault charge. John then entered a plea of nolo contendere to a charge of attempted felonious assault for which he was convicted and sentenced. However, the Michigan Court of Appeals vacated this conviction, holding that Michigan does not recognize a charge of attempted felonious assault.[3] Mrs. Sandul was subsequently charged with interfering with a police officer. She was tried and convicted of this charge, but the state district court judge dismissed the case on a post-trial motion.
 
 B.
 
 6
 Plaintiffs John, Devona, and Robert Sandul filed their complaint in the Wayne County (Michigan) Circuit Court on March 30, 1993, asserting claims under 42 U.S.C. Sec. 1983 against defendant police officers Timothy Larion, Sergeant Robert Stevenson, and Sergeant Lawrence Little. In their complaint, plaintiffs alleged that their First, Fourth, and Fourteenth Amendment rights had been violated when defendants unlawfully entered their house to arrest plaintiff John Sandul, when defendants unlawfully arrested plaintiff John Sandul, and when defendants used excessive force during the arrest. Plaintiffs also made claims under the Michigan Constitution of 1963. Defendants removed plaintiffs' action to the United States District Court for the Eastern District of Michigan.
 
 
 7
 On December 2, 1993, defendants filed a motion to dismiss and/or for summary judgment. The district court held a hearing on this motion on January 18, 1994. At the hearing, the district court granted defendants' motion for summary judgment as to plaintiff John Sandul's constitutional claim based on false arrest but denied defendants' motion as to plaintiffs' claims based on excessive force. On January 25, 1994, plaintiffs stated their desire for an immediate appeal of the district court's grant of partial summary judgment to defendants and thus agreed to have all of their remaining claims dismissed because, according to plaintiffs, plaintiff John Sandul's First Amendment claim based on false arrest was "the essence of [their] case" and therefore "a trial as to the remaining issues would not materially advance the ultimate termination of this litigation." J.A. 317. Thus, plaintiffs concluded that "it would be better to appeal this matter than to proceed through the Final Pre-Trial Order and the Trial absent the First Amendment and False Arrest issues." J.A. 317-18. Accordingly, on January 26, 1994, the district court entered an order dismissing all of plaintiffs' claims, including the excessive force claim, with prejudice. This timely appeal followed.
 
 II.
 A.
 
 8
 Plaintiff John Sandul argues that the district court erred in granting summary judgment to defendants as to his claim of false arrest. Specifically, plaintiff John Sandul asserts that he was unlawfully arrested for exercising his First Amendment right to free speech. We review a district court's grant of summary judgment de novo. Front Row Theatre, Inc. v. American Mfr.'s Mut. Ins. Cos., 18 F.3d 1343, 1346 (6th Cir.1994). Granting summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 56(c). See also Meade v. Pension Appeals & Review Comm., 966 F.2d 190, 192-93 (6th Cir.1992). "The moving party must 'show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial.' " Front Row Theatre, 18 F.3d at 1346 (quoting Guarino v. Brookfield Township Trustees, 980 F.2d 399, 403 (6th Cir.1992)). Moreover, "[w]hen reviewing a grant of summary judgment, inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Notwithstanding this policy, in order to make a denial of summary judgment appropriate, the evidence must be more than 'merely colorable.' " Front Row Theatre, 18 F.3d at 1346 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)) (citation omitted).
 
 
 9
 At the hearing on defendants' motion for summary judgment, plaintiff John Sandul asserted that he was not challenging the constitutionality of the City of Livonia disorderly conduct ordinance under which he was arrested, and plaintiff John Sandul does not qualify this statement on appeal. Rather, plaintiff John Sandul asserts that defendants unlawfully arrested him for the purpose of preventing him from engaging in protected speech. In other words, plaintiff John Sandul argues that defendants arrested him in retaliation for his criticism of abortion protesters.[4]
 
 
 10
 In Duran v. City of Douglas, Ariz., 904 F.2d 1372 (9th Cir.1990), the Ninth Circuit held that the district court's grant of summary judgment to the defendant police officer was inappropriate in a Sec. 1983 action in which the plaintiff claimed that he was arrested in retaliation for exercising his First Amendment right to free speech by criticizing the defendant police officer. In Duran, the court stated that if the defendant "stopped [the plaintiff's] car at least partly in retaliation for the insult he received from [the plaintiff] ... [then] this would constitute a serious First Amendment violation." Duran, 904 F.2d at 1378. However, Duran is distinguishable from the present case. In Duran, the defendant police officer asserted that even if the plaintiff's verbal conduct was protected by the First Amendment, he believed that the plaintiff's conduct constituted disorderly conduct or disturbing of the peace. The court rejected this defense upon finding that the plaintiff's conduct could not have disturbed the peace or incited a riot because the plaintiff's conduct occurred while the plaintiff was travelling in a car late at night on a deserted road where noone but the defendant could hear. Thus, the court noted that the record did not show "any legitimate, articulate reason for [the defendant] to have detained [the plaintiff]." Duran, 904 F.2d at 1377.
 
 
 11
 In contrast, in this case defendants argue that they had probable cause to arrest plaintiff John Sandul for disorderly conduct and felonious assault and that the existence of probable cause defeats plaintiff John Sandul's claim of false arrest. The United States Supreme Court has held that "[i]t is not disputed that the Constitution permits an officer to arrest a suspect without a warrant if there is probable cause to believe that the suspect has committed or is committing an offense." Michigan v. DeFillippo, 443 U.S. 31, 36 (1979). In Criss v. City of Kent, 867 F.2d 259 (6th Cir.1988), we stated: "The Supreme Court has defined 'probable cause' as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.' " Criss, 867 F.2d at 262 (quoting DeFillippo, 443 U.S. at 37). See United States v. Ushery, 968 F.2d 575, 579 (6th Cir.), cert. denied, 113 S.Ct. 392 (1992). We have also held that "[a] valid arrest based upon then-existing probable cause is not vitiated if the suspect is later found innocent." Criss, 867 F.2d at 262. Moreover, "[i]f the circumstances, viewed objectively, support a finding of probable cause, the arresting officer's actual motives are irrelevant." Id.
 
 
 12
 With these principles in mind we now address the question of whether defendants had probable cause to arrest plaintiff John Sandul. The district court held that plaintiff John Sandul's plea of nolo contendere to the charge of attempted felonious assault precludes a challenge by plaintiff John Sandul as to whether defendants had probable cause to arrest him on that charge. However, in this case plaintiff John Sandul was originally arrested for violating the City's disorderly conduct ordinance by yelling obscenities and making an obscene gesture. See California v. Hodari, 499 U.S. 621, 624 (1991) (holding that a person is arrested if a police officer grasps a person or applies any physical force with lawful authority, even if the officer is unsuccessful in subduing the arrestee). Thus, the district court erred in failing to address plaintiff John Sandul's claim of false arrest based on his initial arrest for disorderly conduct. Accordingly, we remand to the district court the question of whether the arrest was in violation of John Sandul's rights and whether, if it was, Officer Larion is entitled to qualified immunity.
 
 
 13
 We agree with the district court, however, that plaintiff John Sandul's plea of nolo contendere to the charge of attempted felonious assault precludes a claim for false arrest on this basis. In Walker v. Schaeffer, 854 F.2d 138 (6th Cir.1988), we held that the plaintiff's Sec. 1983 claim for false arrest was precluded by his prior plea of nolo contendere in state court proceedings in which the plaintiff had a " 'full and fair opportunity to litigate' the issues involving whether defendants ... falsely arrested and/or falsely imprisoned plaintiffs." Walker, 854 F.2d at 142. Like the plaintiff in Walker, plaintiff John Sandul had a full and fair opportunity to litigate the issue of whether defendants had probable cause to arrest him for attempted felonious assault, and thus he cannot challenge defendants' probable cause defense to a claim of false arrest for attempted felonious assault. Therefore, we hold that the district court did not err in granting summary judgment to defendants on John Sandul's claim of false arrest for attempted felonious assault. We reiterate our holding that the district court erred in granting summary judgment to defendant Larion for plaintiff John Sandul's claim based on false arrest for disorderly conduct; however, the district court did not err in granting summary judgment to defendants Stevenson and Little for plaintiff's claim of false arrest based on disorderly conduct because they did not participate in this initial arrest.
 
 B.
 
 14
 Plaintiffs also appeal their claims of unlawful entry and excessive force, which the district court dismissed with prejudice.[5] "As a general rule, neither party may appeal from a voluntary dismissal because it is not an involuntary adverse judgment." Libbey-Owens-Ford Co. v. Blue Cross & Blue Shield Mut. of Ohio, 982 F.2d 1031, 1034 (6th Cir.), cert. denied, 114 S.Ct. 72 (1993). However, this Court has recognized an exception to this general rule "when the dismissal is with prejudice and 'designed only to expedite review' of a prior order having the effect of a dismissal." Laczay v. Ross Adhesives, 855 F.2d 351, 354 (6th Cir.1988) (quoting United States v. Proctor & Gamble Co., 356 U.S. 677, 681 (1958)), cert. denied, 489 U.S. 1014 (1989). In Laczay, we explained that "[t]he basic requirement for appealability of a consent judgment is that the one proposing or soliciting it shall have 'lost on the merits and [be] only seeking an expeditious review.' " Laczay, 855 F.2d at 355. Furthermore, a party seeking to voluntarily dismiss a claim so that he or she may have immediate appeal must "make his or her intention known to the court and opposing parties." Laczay, 855 F.2d at 354.
 
 
 15
 In this case, plaintiffs clearly stated to the district court and defendants that they were seeking a final order of dismissal for the sole purpose of obtaining an expeditious review of the district court's order granting partial summary judgment to defendants for plaintiff John Sandul's First Amendment false arrest claim. Therefore, we must determine whether the district court's grant of defendants' motion for summary judgment as to plaintiff John Sandul's false arrest claim necessarily meant that plaintiffs' claims of unlawful entry and excessive force were also "lost on the merits." Laczay, 855 F.2d at 355.
 
 
 16
 First, we address plaintiffs' unlawful entry claim. In their complaint, plaintiffs asserted that defendants violated their Fourth Amendment rights by unlawfully entering their house to effectuate plaintiff John Sandul's arrest. It is not clear from the record whether the district court intended to grant defendants' motion for summary judgment as to plaintiffs' unlawful entry claim or whether this claim was dismissed with prejudice.[6] However, even if the district court dismissed this claim with prejudice, we conclude that the district court's finding of probable cause for the charge of attempted felonious assault "had the effect of a dismissal" as to plaintiffs' unlawful entry claim. Laczay, 855 F.2d at 354. Therefore, this claim falls within the exception and is appealable.
 
 
 17
 The Supreme Court has held that "[i]t is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586 (1980). Moreover, we have held that "[e]ven if police have probable cause to arrest a suspect, a warrant is required for police entry into the suspect's house unless there are exigent circumstances that excuse the warrant requirement." O'Brien v. City of Grand Rapids, 23 F.3d 990, 996 (6th Cir.1994). This Court has also stated that " '[t]he exigent circumstances exception relies on the premise that the existence of an emergency situation, demanding urgent police action, may excuse the failure to procure a search warrant.' " United States v. Johnson, 9 F.3d 506, 508 (6th Cir.1993) (quoting United States v. Radka, 904 F.2d 357, 361 (6th Cir.1990), cert. denied, 114 S.Ct. 2690 (1994)). As noted in O'Brien, we have found "exigent circumstances to justify a warrantless arrest in a suspect's home in the following three instances: 1) when the officers were in hot pursuit of a fleeing suspect; 2) when the suspect represented an immediate threat to the arresting officers or the public; and 3) when immediate police action was necessary to prevent the destruction of vital evidence or thwart the escape of known criminals." O'Brien, 23 F.3d at 996 n. 5 (citing Jones v. Lewis, 874 F.2d 1125, 1130 (1989) (per curiam)). We review a "District Court's legal conclusions with respect to the issue of exigency" de novo. Johnson, 9 F.3d at 508. See Hancock v. Dodson, 958 F.2d 1367, 1375 (6th Cir.1992) ("[W]here the underlying facts are essentially undisputed, and where a finder of fact could reach but one conclusion as to the existence of exigent circumstances, the issue may be decided by the trial court as a matter of law.").
 
 
 18
 In this case, as earlier discussed, defendants had probable cause to arrest plaintiff for attempted felonious assault. In Hancock, we held that exigent circumstances existed as a matter of law where police officers were notified before arriving at the plaintiff's home that the plaintiff had a gun, was suicidal and possibly homicidal, had fired shots, and had threatened to kill any police officer on the site. Hancock, 958 F.2d at 1375-76. Similarly, in this case, plaintiff John Sandul cannot dispute that he threatened defendant Officer Larion because he pleaded nolo contendere to the charge of attempted felonious assault. Thus, defendants were entitled to enter plaintiffs' home to arrest plaintiff John Sandul because he represented an immediate threat to the arresting officers. Therefore, under the facts of this case, we conclude that exigent circumstances existed to justify the warrantless entry of plaintiffs' house to effectuate plaintiff John Sandul's arrest. Accordingly, we hold that the district court did not err in dismissing this claim.
 
 
 19
 Next, we address plaintiffs' excessive force claim. At the hearing for defendants' motion for summary judgment, the district court denied the motion as to plaintiffs' excessive force claim upon finding that neither party had presented affidavits on this issue and that a question of fact remained that precluded the grant of summary judgment. We conclude that plaintiffs' excessive force claim was not "lost on the merits" when the district court granted defendants' motion for summary judgment as to plaintiff John Sandul's false arrest claim. Plaintiff John Sandul's claim of false arrest and plaintiffs' claim of excessive force are two discrete claims. Clearly, plaintiffs could have gone forward with their excessive force claim. Therefore, we hold that the dismissal of plaintiffs' excessive force claim was not an involuntary adverse judgment.
 
 III.
 
 20
 For the reasons stated, the order of the district court granting partial summary judgment to defendants is AFFIRMED in part and REVERSED in part, and the case is REMANDED to the district court for further proceedings consistent with this opinion. The district court's dismissal of plaintiffs' unlawful entry claim is also AFFIRMED; however, because it appears that plaintiffs' attorney was misled by the district court (see footnote 5), the district court's dismissal of plaintiffs' remaining claims of excessive force and their claims under the Michigan Constitution of 1963 is REVERSED.
 
 
 
 *
 Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation
 
 
 [1]
 Phillip Krikorian, the driver of the truck, was issued a speeding ticket
 
 
 [2]
 It is not clear from the record as to which Livonia ordinance plaintiff John Sandul was charged with violating. Plaintiffs did not allege under which ordinance John was arrested in their complaint, and, on appeal, plaintiffs claim that John was arrested for violating the City of Livonia indecent and improper conduct ordinance, while defendants assert that John was arrested for violating either the City of Livonia disorderly person ordinance or the disorderly conduct ordinance. See Plaintiffs' brief at 5; Defendants' brief at 1
 
 
 [3]
 Although plaintiff John Sandul's conviction for attempted felonious assault was overturned by the Michigan Court of Appeals when it found that Michigan does not recognize the crime of attempted felonious assault, we do not believe that this changes the effect of plaintiff's plea of nolo contendere in this case in light of the fact that the Wayne County Prosecutor's Office has appealed this decision to the Michigan Supreme Court, which recently held in People v. Jones, 504 N.W.2d 158, 164 (Mich.1993) that Michigan does recognize the offense of attempted felonious assault
 
 
 [4]
 Plaintiff John Sandul states in his brief on appeal that "[i]t is contended that John Sandul was pursued, stopped, arrested, detained, his home entered and he was physically abused for his expressed displeasure with the demonstrating operation rescue abortion protestors [sic]." Appellants' Brief at 11. However, plaintiff John Sandul cites a litany of cases that do not stand for this proposition and are inapposite to this case. See, e.g., City of Houston v. Hill, 482 U.S. 451 (1987) (overturning defendant's conviction for violating a facially unconstitutional ordinance); Lewis v. City of New Orleans, 415 U.S. 130 (1974) (same); Cohen v. California, 403 U.S. 15 (1971) (overturning defendant's conviction for breach of the peace by holding that the application of the statute to defendant's conduct was unconstitutional)
 
 
 [5]
 We note that after the district court granted defendants' motion for summary judgment for the First Amendment false arrest claim, plaintiffs requested permission for an interlocutory appeal on this matter pursuant to 28 U.S.C. Sec. 1292(b). Instead, the district court suggested to both parties that it enter an order dismissing the case with prejudice so that plaintiffs would have a final order on which to appeal. Before agreeing to this course of action, plaintiffs stated that they did not wish to give up any of their claims, to which the district court incorrectly stated: "[I]f I dismiss it with prejudice, then you can raise any claims. I assume you can." J.A. 319. However, the district court also cautioned that "I am not giving any legal advice as to the appeal." J.A. 320
 
 
 [6]
 At the hearing for defendants' motion for summary judgment, the district court stated that it was granting defendants' motion regarding the false arrest claim but denying the motion regarding the excessive force claim. J.A. 313-314. Thus, the district court did not explicitly state its holding regarding plaintiffs' unlawful entry claim. Furthermore, when defendants' counsel asked the district court to confirm his understanding that the district court had granted summary judgment to defendants on all issues except for the excessive force issue, the district court did not affirmatively answer. J.A. 319-320. Moreover, the district court's order dismissing the case states:
 Defendants having filed a Motion for Summary Judgment; and the Court having granted the motion with respect to that aspect of plaintiffs' Sec. 1983 claim premised upon allegations of false arrest; and the plaintiffs having indicated to the court that trial as to the remaining issues would not materially advance the ultimate termination of this litigation;
 IT IS ORDERED that this case be dismissed with prejudice.
 J.A. 11.